IRVIN STAHL, Respondent and Cross-Appellant, v. FARMERS UNION OIL COMPANY of Richland; Montana, a Corporation, and WABASH FIRE AND CASUALTY COMPANY, St. Paul, Minnesota, a Corporation, Defendants and Appellants.

No. 10710

Submitted December 9, 1964. Decided March 5, 1965.

399 P.2d 763.

Baxter Larson (argued), Wolf Point, for appellants.
Robert Hurly (argued), Glasgow, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a judgment of the district court awarding the sum of $5500 damages to the plaintiff, Irvin Stahl, against the defendant, Farmers' Union Oil Company. The court below found that the co-defendant, Wabash Fire and Casualty Co., was entitled to a judgment on the merits, as against the plaintiff. The specifications of error on plaintiff's cross-appeal relate only to the limitation and amount of damages as against the defendant oil company. No error is assigned to that portion of the judgment relieving the surety, Wabash, and accordingly, it does not participate in this appeal.

The record reveals that the plaintiff, Stahl, hereinafter referred to as respondent, was the owner of a 1956 GMC two and one-half ton gasoline powered truck which he had purchased in November, 1958 for the sum of $5500. It was a new truck, being an unsold unit carried over from 1956. At the time of the incident giving rise to this litigation the truck had been used by the respondent for little more than a year and had been driven about 9,000 miles. The respondent had used the truck for purposes of farming and custom hauling during 1959, and in December of that year was hired by John Richardson to haul hay to the Richardson ranch at the rate of $5.50 per ton. On December 6, 1959, while engaged in this hauling operation for Richardson, the respondent stopped at the appellant's service station in Richland, Montana for the purpose of refueling his loaded truck. The attendant on duty began refueling the truck with gasoline from the station pump. After having pumped about 25 gallons of gasoline into the fuel tanks of the respondent's truck the supply tanks of the gas station became empty and these in turn had to be refilled. The attendant erroneously replenished the gasoline supply tank of the station with diesel fuel. Thereupon the refueling of respondent's truck continued and, as a result, at the end of the refueling operation the truck tanks, having a capacity of 125 gallons, contained an admixture of approximately 40 gallons of gasoline and 80-85 gallons of diesel fuel.

About five miles after leaving Richland, Montana, respondent noted loss of power and oil pressure but having no knowledge of the diesel fuel continued to make his hay delivery at the Richardson ranch and return home, a total distance of about 80 miles. The respondent by reason of cold weather added several cans of Heet attempting to overcome the difficulty with the engine.

Lawrence Poe, manager of the Farmers Union Oil Company, discovered the mistake in fuel delivery in the evening of December 6, 1959, and called the respondent about 7:00 A.M. on December 7, and advised him of the fueling error. The following morning Mr. Poe, acting for the appellant, went to respondent's ranch, drained the fuel tanks, replaced the mixed fuel with gasoline, and drained and replaced the oil and the oil filter on respondent's truck. Notwithstanding respondent's truck continued to lack in power and had a sub-normal oil pressure. Respondent was advised by the appellant Oil Company to continue to operate the truck on the theory that it would perhaps smooth out the roughness of the engine and lack of power.

Respondent, acting on the oral advice of the appellant, continued to use the truck on different jobs, and on February 4, 1960, he was employed by a prime contractor at Glasgow Air Base to haul materials to Fort Sill, Oklahoma. While in Oklahoma, by reason of the lack of power in the damaged engine of the truck, the rear end of respondent's truck went out. This damage was repaired by the maker of the truck under the warranty of sale.

On respondent's return to Montana with the truck he met with the directors of the appellant corporation and one Barney Loftsgaard, a director, stated that appellant was liable for the damages and that the board of directors called the insurance carrier requesting that the carrier promptly send an adjuster.

Although the adjuster, Donald Pedersen, had been notified of the incident within one week after December 7, 1959, he did

not contact respondent until April 11, 1960, at which time, representing the Wabash Fire and Casualty Company, he requested the Newton Motors, Inc., of Glasgow, Montana, to dissemble the truck so he could inspect and examine the motor.

Subsequently the insurance carrier forwarded its check in the sum of $22.50 to its adjuster, Donald Pedersen, who on July 18, 1960, mailed the check to Newton Motors.

The cover letter accompanying the check, contained this wording:

"Enclosed is a draft in the amount of $22.50 from Wabash Fire and Casualty Insurance Co. to pay for the examination and disassembly of Ervin Stahl's motor *as requested by the writer*." Signed by Donald Pedersen. (Emphasis supplied.)

This inspection revealed that the motor was in poor condition, would require a new block assembly, which included cam shaft, valves and new pistons. The cam shaft was out and the cylinder walls of the motor were scored.

There is a sharp conflict in the record as to whether the adjuster Pedersen on April 11, 1960, authorized Newton Motors to repair the damaged engine above-stated in the sum of $885.01. It is clear however, that the insurance carrier for the appellant, acting through its agent Don Pedersen did offer to pay one-third of the repairs necessary on the engine on May 26, 1960, or shortly thereafter. The respondent refused this one-third compromise of the carrier.

The truck repair at Newton Motors, Inc., idled the unit for a period of approximately three weeks, at the end of which time respondent was notified that his truck was repaired. The repair company claimed and exercised a possessory lien on the truck in the sum of $885.01. On or about November 19, 1960, respondent entered into a modified purchase agreement with the lien holder, Newton Motors, and the truck was released. Respondent was unable to finance the repair bill, although he made a diligent effort to do so. The respondent was deprived

of the use and earnings of this motor unit for approximately eight months.

From this judgment appellant appeals reciting fifteen specifications of error. Reducing these specifications of error to three basic contentions, they are:

(1) Respondent was guilty of contributory negligence in continuing to use his truck from and after December 7, 1959, the day of the diesel fuel delivery and subsequent to that date after observing that the engine was malfunctioning;

(2) Respondent's failure to pay Newton Motor Company the repair bill and regain possession of the truck after repairs; and

(3) As to the amount and measure of damages.

Adverting to paragraph 1 anent contributory negligence of the respondent in operating the truck after December 7, 1959.

The record discloses that on more than one occasion appellant advised respondent "Just to try and see if it [the engine] would come out of it, *keep it running* and see if it would come out of it."

Respondent, acting on the advice of appellant, devoid of any prior experience with diesel oil commingled with gasoline, acted on this advice. As a consequence appellant cannot now maintain any valid claim of contributory negligence. This is patently true after reading the pronouncements over the years, of this court.

In Stevens v. City of Butte, 107 Mont. 354, 365, 85 P.2d 339, 343, this court ruled that "In making a choice between two courses to pursue, one is not required to make the correct choice in the light of after-events, but only such choice as a reasonably prudent person might make under the known or obvious circumstances."

In Dahlin v. Rice Truck Lines, 137 Mont. 430, 352 P.2d 801, a case decided on June 30, 1960, Mr. Chief Justice Harrison covered exhaustively the question of contributory negligence, where, quoting from the case of Fulton v. Chouteau

County Farmers' Co., 98 Mont. 48, 65, 67, 68, 37 P.2d 1025, 1030, he stated:

" 'The test as to contributory negligence on the part of plaintiff in such a case as this, is, Did he, or did he not, in the circumstances, act as would an ordinarily prudent man? This question, with that of proximate cause and, consequently, contributory negligence, is ordinarily for the jury (Atkinson v. Goodrich Trans. Co., 60 Wis. 141, 18 N.W. 764, 50 Am.Rep. 352; Coffman v. Singh, [49 Cal.App. 342, 193 P. 259], above; White v. Davis, [103 Cal.App. 531, 284 P. 1086], above; Shearer v. Dewees, [151 Minn. 380, 186 N.W. 793], above; Wise v. Stagg, 94 Mont. 321, 22 P.2d 308) ; and it has been said that where the plaintiff had a verdict notwithstanding his negligence, it was supported on the theory that the jury did not consider it the proximate cause. (Brown v. Cent. Pac. Ry. Co., 2 Cal.Unrep.Cas., 730, 12 P. 512.)

" '*Contributory negligence is a question of law only when the evidence is of such a character that it will support no other legitimate inference, and even where the facts are undisputed, if reasonable minds might draw different conclusions upon the question and from the evidence, the question is one for the jury.* White v. Davis, above; see Autio v. Miller, 92 Mont. 150, 11 P.2d 1039, 1045; Childers v. Deschamps, 87 Mont. 505, 290 P. 261.' (Emphasis supplied.)"

██ Contention (2) of appellant is without merit in that the trial court found by competent evidence that the respondent was never financially able to pay Newton Motors the repair bill in the sum of $885.01 between April 11 and the middle of December 1960; that respondent could have made $100 per day gross, or $66.66 per day net, during that period.

The Montana statute, section 17-401, R.C.M.1947, provides:

"*Breach of obligation other than contract.* For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment

proximately caused thereby, whether it could have been anticipated or not."

As a consequence of law, we cannot find any logical or practical reason for drawing a distinction between cases in which the property is totally destroyed and those in which the property is damaged but repairable, as under the circumstances here. The trial court found:

"That the plaintiff was financially unable to pay said bill. Plaintiff attempted to make financial arrangements whereby the repair bill could be paid and the truck released from the lien but he was unable to do so. Plaintiff attempted to and was unable to rent a substitute truck during the period when his truck was tied up under said lien. Plaintiff acted with the care and diligence to be expected of the ordinary prudent man under similar circumstances, in attempting to minimize his damages."

In addition the trial court found the reasonable value of the truck-tractor to have been $5500 and limited the damages to that amount. Thus, the trial court allowed $885.01 for the repair bill and $4,614.99 as special damages for the loss of the use of the truck, making a total, limited to the value of the truck-tractor.

This court as early as the case of Ashley v. Rocky Mountain Bell Telephone Co., 25 Mont. 286, 64 P. 765, ruled that a customer damaged must mitigate the damages as much as possible. But in the instant case, with continued instructions to use the truck by the appellant, assurance of liability, instructions for inspection and according to the plaintiff-respondent's case, instructions for the repair of the engine; all of these factors were such, if believed, as to continue the negligent acts of the defendant-appellant so that the respondent could not mitigate the damages even though he diligently tried.

The general rule on damages is that the owner can recover for being deprived of the use of a damaged vehicle only for the period of time reasonably necessary in making repairs.

Johnson v. Central Aviation Corp., 103 Cal.App.2d 102, 229 P. 2d 114, and see Valencia v. Shell Oil Co., 23 Cal.2d 840, 147 P.2d 558.

But here, as noted before, the appellant caused not only the damage, but the extended period of time during which the loss of use was experienced.

We believe that the finding of the trial court, that the diesel fuel mishap was proximately caused by the negligence of the appellant, and that the respondent was not careless or negligent, finds substantial support in the record.

Appellant argues that respondent cannot prevail, his contention being that respondent violated sections 8-119 and 8-121, R.C.M.1947, which sections are part of the Motor Carrier Act of Montana. Appellant's basic premise is that the respondent could not prevail as in violating the above sections any contract for hauling was void. This being an action in tort, contractual obligations, if any, are not germane.

We conclude that even if respondent had been shown to be in violation of some statute, this fact, if it be a fact, does not resolve the decisive inquiry of causation. Contributory negligence is not established until causal relationship between it and the injury is shown. See Dahlin v. Rice Truck Lines, 137 Mont. 430, 352 P.2d 801.

On appeal respondent filed two cross-appeal specifications of error being:

(1) The court erred in limiting the respondent's recovery to the actual value of respondent's truck at the time of the injury.

(2) The court erred in finding that respondent's damages for the loss of the use of this vehicle did not start until April 11, 1960.

Our previous discussion of the issue of damages answers the contentions of the cross-appeal. However, cross-appellant cites us to Reynolds v. Bank of America National Trust and Savings Ass'n, 53 Cal.2d 49, 345 P.2d 926, 73 A.L.R.

2d 716, for a rule that damages for loss of use may not be limited to the market value of the vehicle but may include additional damages for loss of use during the period *reasonably required for replacement.*

We agree with the rule stated by the California Court, but as we have attempted to explain previously, the time reasonably required for replacement was not the long period of eight months, but rather the time caused by appellant's negligence. The GMC truck-tractor could have been replaced easily, if respondent had had any funds, and we hold that the rule of limiting the total damages to the value of the unit, under the rather odd fact situation here, is proper. The cross-appeal is accordingly dismissed.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON, ADAIR and CASTLES concur.