**Juan Antonio BORRAS, Plaintiff, Appellant,**

v.

**SEA–LAND SERVICE, INC., Defendant, Appellee.**

**No. 77–1211.**

United States Court of Appeals, First Circuit.

Argued Sept. 6, 1978.

Decided Nov. 20, 1978.

---

882

Jack Steinman, New York City, with whom Harry A. Ezratty, San Juan, P. R., was on brief, for plaintiff, appellant.

Jose Antonio Fuste, San Juan, P. R., with whom Jimenez & Fuste, San Juan, P. R., was on brief, for defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Juan Antonio Borras appeals from the entry of judgment n. o. v. in favor of Sea-Land Service, Inc. after a jury had awarded Borras $300,000 against Sea-Land on his negligence claim brought under the Jones Act, 46 U.S.C. § 688. Borras also challenges dismissal of his unseaworthiness claim, and asks us to disapprove the district court's alternative holding that Sea-Land "has stated a good and sufficient grounds for a new trial in that the verdict is contrary to the great weight of the evidence, and that the amount of the award is excessive." [1]

Borras' negligence claim stemmed from an incident that took place in June 1973 while he was a pantryman on a Sea-Land vessel. The version of the incident that was most supportive of Borras' claim was in the deposition of a messman named Nobles. He said that the Captain while at breakfast one day asked Borras for a soup spoon.

> "Mr. Borras brought him a soup spoon that . . . had soap particles on it . . . and Mr. Borras went back in to finish washing dishes. The Captain came into the pantry with the spoon in his hand and he was in a rage, he was completely out of control of himself, raging, cussing, yelling, he took the spoon and threw it at Mr. Borras, Mr. Borras jumped out of the way and hit his head on the metal shelf.
> "The Captain told Mr. Borras that he wasn't no fucking good."

According to Nobles, the Captain was ten or twelve feet from Borras when he threw the spoon, and "was cussing at him, yelling at him, threatening him." During the incident, the Captain looked, "very vicious, mad, out of control of himself, looked like he wanted to kill somebody."

This version contrasted with the testimony of Chief Steward Keno who, while confirming the spoon-throwing incident in broad detail, said that the Captain had directed no complaints against Borras, did not yell at or curse him, and, after expressing displeasure, had merely tossed the spoon into the sink.

Borras himself did not testify, presumably because of his disability. His accident report made after the incident indicated that the Captain "came to the pantry to yell with the steward about he found soap on the spoon. Then he threw the spoon to the sink hard, I try to escape from the spoon and hit the shelf and the water raiser, on my left side of the head." He listed his injuries as "on the eyes and head."

There was evidence that immediately after the incident Borras was treated on the vessel for an abrasion of the corner of the left eye and excused from work for several days. Two days later he was examined at a hospital in Panama and received medication and a patch. He resumed work on the ship, but a week later received treatment for the eye and for headaches at a hospital in San Francisco. Again he resumed shipboard work, but a month later he revisited the Public Health Hospital in San Francisco where he was found to be nervous and hyperactive, and was considered to require a neurological work-up. He was referred to the Public Health Service Hospital in Puerto Rico, where his condition continued to deteriorate. He became disoriented, his memory and judgment became impaired, and his mental condition finally deteriorated to the point of total or near-total incapacity. Extensive hospitalization followed.

There was evidence from which the jury could have found that Borras underwent a dramatic mood change after the accident, going from a sunny, outgoing personality to a depressed one.

---

1. As the court below entered judgment n. o. v. for the defendant, it could not, consistently therewith, have entered an order for a new trial, and of course did not do so. The two remedies are separate and distinct. 6A J. Moore, Moore's Federal Practice ‵. 59.08[5] (2d ed. 1974).

Borras sought damages entirely for his mental breakdown, which he attributed to the spoon-throwing incident. Damages were not sought for the eye injury, nor for any other specific physical injury.

To establish a causal link between the spoon incident and his mental deterioration, Borras relied upon the testimony of Dr. Jose R. Vigoreaux, a psychiatrist. Dr. Vigoreaux testified, without objection, that Borras was suffering from a psychosis, specifically a chronic schizophrenic reaction, and that "the incident was the cause of his present mental condition." Dr. Vigoreaux explained,

"So this man was normal, psychological and physical, up to June, 1973, when he had this minor injury to his eye, but major psychological injury to his soul or to his personality. There were so many adversities right from the moment that the Captain insulted him and threw the spoon at him, all the way to going in the hospital where he was not well attended until finally he came into a hospital for psychiatric treatment.

"All these series of events contributed to his mental breakdown . . . So my opinion is that that incident was the cause of his psychological disease."

The defendant's experts disagreed with Dr. Vigoreaux. Dr. Angel Suro and Dr. Manuel Rodriguez Perez testified that Borras suffered from an organic brain syndrome with psychosis, not schizophrenia. This conclusion was supported as well by testimony of Dr. Pedro A. Sifre Franco, a psychologist, who testified to the results of a series of psychological tests of Borras. The cause of the organic syndrome could not be determined, but possible contributing factors were Borras' past history of heavy drinking, and a head injury Borras sustained two years before the spoon incident. None of the experts thought that the spoon incident could have been a cause of organic syndrome, though one of them conceded that if Borras had an organic brain syndrome, the spoon incident might have "set him off," "calling attention to what had not been seen before."

In granting judgment n. o. v., the district court ruled that the evidence would support a finding by the jury that the Captain's throwing of the spoon was negligent, and that the jury "might well infer that the plaintiff's fear of being struck was justified and that his knee-jerk reaction was within the normal range of human conduct." But the court went on to say,

"It is clear from this testimony, and from plaintiff's opening statement, that it is not seriously contended that the 'minor' physical injury to plaintiff's eye, in and of itself, was a substantial or a direct contributing cause of plaintiff's mental condition. The thrust of Dr. Vigoreaux's testimony was that plaintiff had had his feelings hurt by this series of events, and that these hurt feelings had triggered his mental breakdown. Such an opinion in the light of the facts here can be based upon nothing more than mere suspicion and conjecture, and is entirely too speculative to support the verdict.

"To summarize, therefore, I hold that the Captain's conduct in the galley, to the extent it consisted of name calling and swearing, did not constitute negligence under the circumstances here.[2] Although the Captain's act of tossing the spoon into the sink could be construed as negligence,

---

2. Earlier in its opinion the district court explained its conclusion of no negligence on the Captain's part as follows:

"Aside from the tossing of the spoon, there was no evidence of any violent act or any physical threat toward anyone. The evidence is clear that all of this angry swearing and name calling was directed solely at the Chief Mate and not the plaintiff."

The court went on to say that it was not logical to believe that "this angry scene could have produced 'major psychological injury'" to a veteran of three years service at sea with no previous record of abnormal sensibility. The court went on,

"I hold, therefore, that the evidence is insufficient to support a finding that, except for the tossing of the spoon which has already been mentioned, the Captain's conduct in the galley was in any way negligent or tortious as to the plaintiff. Even if it were, the evidence is insufficient to support a finding that plaintiff's mental and psychological deterioration was a foreseeable result thereof."

the evidence does not support a finding that such conduct was a contributing cause of plaintiff's mental deterioration."

■ We think the court below should not have taken the case from the jury. This court said in *Dumas v. MacLean*, 404 F.2d 1062, 1064 (1st Cir. 1968),

"The principles governing the consideration of motions for directed verdict and judgments n. o. v. are well settled in this circuit. The evidence must be viewed in the light most favorable to plaintiff, giving him the benefit of every favorable inference that may be fairly drawn. If fair minded men may draw different inferences and reasonably disagree as to what the verdict should be, the matter is for the jury."

Thus, if viewing the evidence without weighing the credibility of the witnesses there is any substantial evidence supporting the verdict, judgment n. o. v. is improper. C. Wright, Law of Federal Courts § 95, at 473 (3d ed. 1976).

■ The court's version of the evidence, stated in conjunction with its ruling on the motion for judgment n. o. v., ignored the deposition testimony of Nobles, which indicated that the Captain's anger was directed at Borras, that the spoon was flung at him, and that there were both threats and insults. For purposes of ruling on the motion for judgment n. o. v., the district court erred in disregarding this deposition testimony which was admitted without objection and which the jury was entitled to credit.

■ The court also rejected the opinion of Dr. Vigoreaux that the spoon-throwing incident was causally related to Borras' mental deterioration, saying, in effect, that his opinion was too speculative. However, Dr. Vigoreaux's professional credentials were, on their face, perfectly adeq·1ate for him to be allowed to testify on this matter as an expert; and, in fact, Dr. Vigoreaux was permitted to testify as an expert, without objection, and, likewise without objection, was permitted to render an opinion on the question of causal relationship. His expert opinion thus became part of the cor-

pus of evidence before the jury. In ruling on the motion for judgment n. o. v., the judge could not substitute his own views as to Dr. Vigoreaux's credibility for those of the jury.

We do not know, since a transcript of the charge is not before us, on what precise theory or theories of negligence the case was put to the jury. But if the evidence is viewed "in the light most favorable to plaintiff, giving him the benefit of every favorable inference that may be fairly drawn," *Dumas v. MacLean*, 404 F.2d at 1064, a verdict for plaintiff is not unsupportable as a matter of law. The court itself characterized the spoon-throwing as capable of being construed as negligent, and Noble's testimony, if believed, suggests conduct approaching an assault. That bodily harm occurred, although minor, made defendant liable even for unforeseeable emotional disturbance resulting from the tortious conduct. Restatement (Second) of Torts § 456 (1965); W. Prosser, Law of Torts § 43, at 261–62 (4th ed. 1971). The court below felt that the lack of any reasonable connection between the minor eye injury and the psychosis precluded recovery for the latter, but that analysis is too narrow. A defendant is liable not only for the emotional consequences flowing from the injury itself but for those flowing from the conduct that causes the injury. *See* Restatement (Second) of Torts § 456(a), Comment e. We think the relevant conduct here included not only the throwing of the spoon but the Captain's manner and manifestations at the time he threw it. Dr. Vigoreaux's testimony can be understood as stating a causal connection between plaintiff's mental collapse and the fear and shock resulting from having an angry Captain throw a spoon at or very near him. Viewing the evidence in plaintiff's favor, we find sufficient evidence of some connection between the relevant conduct and the purported psychosis to support the verdict. *Compare* Restatement (Second) of Torts §§ 46, 436, 436A.

■ As we said in *Bennett v. Perini Corp.*, 510 F.2d 114, 117 (1st Cir. 1975), under the Jones Act,

"[D]efendant's negligence need only be a contributing factor rather than a primary cause of injury. *Peymann v. Perini Corp.*, 507 F.2d 1318 (1st Cir. 1974)." The plaintiff's burden to prove cause-in-fact and proximate cause in the Jones Act cases is relatively light. *Santana v. United States*, 572 F.2d 331, 335 (1st Cir. 1977). In *Ferguson v. Moore-McCormack Lines, Inc.*, 352 U.S. 521, 523, 77 S.Ct. 457, 458, 1 L.Ed.2d 511 (1957), the Supreme Court said,

" 'Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence *played any part, even the slightest,* in producing the injury or death for which damages are sought.' " [Emphasis supplied].

We accordingly hold that it was error for the court below to have entered judgment n. o. v., and accordingly reverse the judgment below insofar as it directs the entry of judgment for the defendant.

■ We turn next to the effect to be given to the district court's holding that "the defendant has stated a good and sufficient grounds for a new trial in that the verdict is contrary to the great weight of the evidence, and that the amount of the award is excessive." Like the parties, we treat this ruling as the conditional granting of a new trial motion provided for in Fed.R. Civ.P. 50(c)(1), which states,

"If the motion for judgment notwithstanding the verdict . . . is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed . . . . In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered." [3]

Borras asks us to set aside the ruling as to a new trial, claiming that the district court's conclusion that the jury's verdict is contrary to the great weight of the evidence was based upon the district court's disregard or misunderstanding of the testimony, particularly that of Dr. Vigoreaux. While, for purposes of the judgment n.o.v. ruling, the court erred in ascribing no weight to Dr. Vigoreaux's testimony, which it regarded as "speculative," the court accurately summarized Dr. Vigoreaux's testimony and quoted material portions thereof, indicating that it considered the testimony and fully understood its purport. Thus we cannot agree that the district court disregarded or misunderstood the testimony.

■ The question nonetheless remains whether the court abused its discretion in holding that a new trial was in order. Even though there may be substantial evidence that would prevent the direction of a verdict or a judgment n. o. v., it is,

"the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice . . ."

*Aetna Casualty & Surety Co. v. Yeatts*, 122 F.2d 350, 352 (4th Cir. 1941). There are a number of reasons that may justify the granting of a new trial:

"For instance, the district judge, who saw and heard the witnesses, might be of the view that the defendant's evidence was the more credible, and that the verdict for the plaintiff was against the weight of the evidence. Or he might conclude, from the size of the verdict, that the jury probably did not weigh the issues of liability impartially. In such instances he might come to the determination that in the interest of justice the verdict should be set aside and the issues submitted to another jury."

*Bradstreet, Inc.*, 438 F.2d 433 (3d Cir. 1971); *O'Neil v. W. R. Grace & Co.*, 410 F.2d 908, 913 (5th Cir. 1969); *Berner v. British Commonwealth Pacific Airlines, Ltd.*, 346 F.2d 532 (2d Cir. 1965), *cert. denied*, 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966).

---

**3.** The propriety under Fed.R.Civ.P. 50(c)(1) of reviewing the conditional granting of a new trial upon reversing the judgment n. o. v. is clear. *E. g., Moore v. Shultz*, 491 F.2d 294 (10th Cir.), *cert. denied*, 419 U.S. 930, 95 S.Ct. 203, 42 L.Ed.2d 161 (1974); *Grove v. Dun &*

*Stevens v. G. L. Rugo & Sons*, 209 F.2d 135, 141 (1st Cir. 1953) (Magruder, C. J., dissenting). Nevertheless, it has long been the rule that a trial judge should not act merely as a "13th juror" and set a verdict aside simply because he would have reached a different result had he been the trier of fact. Rather, the judge's duty is to exercise a more limited judicial discretion. *See Mt. Adams & E. P. Inclined Ry. Co. v. Lowery*, 74 F. 463, 470–76 (6th Cir. 1896). A trial judge is not to interfere with the verdict,

> "unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been then it is his duty to set the verdict aside; otherwise not." [Footnote omitted].

6A J. Moore, Moore's Federal Practice ¶ 59.-08[5], at 59–160 to 161.

■ Turning to the scope of our own review, an appellate court must sustain the granting of a new trial unless there was an abuse of discretion. Where the basis for a new trial is that the verdict is contrary to the great weight of the evidence, the modern trend has been away from earlier decisions that the district court's discretion is virtually unlimited. 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2819 (1973). Today it is often said that an appellate court will exercise "a closer degree of scrutiny and supervision" where the basis for the new trial is the trial court's evaluation of the weight of the evidence rather than the trial court's feeling that an "undesirable or pernicious element," such as trial error or prejudicial statements, obtruded into the trial. *Lind v. Schenley Industries, Inc.*, 278 F.2d 79, 90 (3d Cir.), cert. denied, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960); *see Fireman's Fund Insurance Co. v. Aalco Wrecking Co.*, 466 F.2d 179, 185–87 (8th Cir. 1972), cert. denied, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973); *O'Neil v. W. R. Grace & Co.*, 410

F.2d at 913–15; *Lewin v. Metropolitan Life Insurance Co.*, 394 F.2d 608, 614–15 (3d Cir. 1968); *Duncan v. Duncan*, 377 F.2d 49, 52–55 (6th Cir.), cert. denied sub nom. *Fain v. Duncan*, 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 260 (1967); cf. *Taylor v. Washington Terminal Co.*, 133 U.S.App.D.C. 110, 409 F.2d 145, 148 n. 13, cert. denied, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969) (review of grant of new trial for excessive damages).

■ The case before us presents a unique and bizzare set of circumstances. The jury's verdict attributes Borras' total mental breakdown to what would seem to be a relatively minor incident involving an utterly inconsequential injury. While the testimony of a qualified psychiatrist supports this conclusion, Dr. Vigoreaux was quite imprecise as to the actual triggering events—speaking only of "[a]ll these series of events" as causative factors. Given the relative triviality of the spoon-throwing incident, the considerable lapse of time between the incident and Borras' mental collapse, and the strong countervailing medical testimony of organic brain disease from a number of physicians and a psychologist, one can understand the district court's doubt that the events immediately surrounding the injury to the eye could possibly have been a causative factor, and its feeling that Dr. Vigoreaux's opinion was based more on speculation than science. We note also that there was some suggestion in the evidence that the Captain, who was not Puerto Rican, might have insulted Borras because of his nationality, a factor which the court might have thought to have incensed the jury. Against these considerations is our determination that the evidence is legally sufficient to support the verdict, and the possibility that some of the errors that infected the court's judgment n. o. v. may also have infected its decision in favor of a new trial.[4] Under the circumstances,

---

4. In particular, it is not clear from the district court's opinion whether in passing on the new trial motion it completely ignored the testimony of Nobles that the Captain threatened and insulted Borras, or whether the court discount-ed the testimony only after giving it due consideration. It also is not clear—in large part because we do not have the court's instructions to the jury before us—whether the district court's understanding of the legal theories that

we are unwilling to say that either granting or denying a new trial on the ground that the verdict is contrary to the clear weight of the evidence would constitute an abuse of discretion [5]; however, we think that the district court should have a further opportunity to pass on the matter now that this court has spoken on a number of issues which, though not dispositive, are certainly relevant. We therefore remand with instructions that the district court reconsider the motion in light of the present opinion, with the option either of granting or denying the motion as it deems just and proper. *See Stevens v. G. L. Rugo & Sons*, 209 F.2d 135, 140; 5A J. Moore, Moore's Federal Practice ¶ 50.14, at 50–121 to 122 (2d ed. 1977).

Finally, we find no merit in appellant's contention that the district court erred in dismissing Borras' unseaworthiness claim. An isolated personal act of negligence by a crew member is not to be equated with unseaworthiness. *See Boudoin v. Lykes Brothers Steamship Co.*, 348 U.S. 336, 337, 75 S.Ct. 382, 99 L.Ed. 354 (1955); *Conceicao v. New Jersey Export Marine Carpenters, Inc.*, 508 F.2d 437, 441–43 (2d Cir. 1974), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975); *cf. Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 500, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971) (isolated negligent act by longshoreman).

The judgment below is vacated and the cause remanded to the district court for reconsideration of defendant's motion for a new trial. The dismissal of the unseaworthiness claim is affirmed.

*So ordered.*

---

could support Borras' recovery was in accord with our earlier discussion.

5. We hold, however, that the finding of excessive damages is unsupported. The seriousness of Borras' condition was never controverted at trial. Defendant's counsel understandably conceded at the hearing before us that if liability was properly established, the verdict was not excessive.