**Robert URICO and Carol Urico**

v.

**PARNELL OIL COMPANY.**

Civ. A. No. 78–0674–Z.

United States District Court, D. Massachusetts.

July 27, 1982.

H. Glenn Alberich, Mahoney, Hawkes & Goldings, Boston, Mass., for plaintiffs.

Francis Leone, Ficksman & Conley, Boston, Mass., for defendant.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

This case was brought by Robert and Carol Urico for damages incurred when their tractor-trailer was hit from behind by an oil truck owned by the defendant, Parnell Oil Company. At trial on the merits, the jury found, in response to Special Questions, that the driver of the Parnell truck was 90% negligent in causing the accident and awarded the plaintiffs $11,400 for loss of use of the trailer during the time necessary to make repairs, and $51,100 for loss of use of the trailer after the expiration of a reasonable time to make repairs. The defendant has moved for judgment limiting damages to the reasonable repair time, and judgment notwithstanding the verdict or, in the alternative, for a new trial.

A party attempting to set aside a jury verdict has a heavy burden. A motion for a new trial will be granted only if the verdict was against the clear weight of the evidence, based upon evidence which is false, or will result in a clear miscarriage of justice. See *Coffran v. Hitchcock Clinic, Inc.*, 683 F.2d 5, 6 (1st Cir.1982) (*citing Borras v. Sea-Land Service, Inc.*, 586 F.2d 881, 886–887 (1st Cir.1978). Similarly, a court will grant a motion for judgment notwithstanding the verdict only where there can be only one conclusion that a reasonable juror could reach, viewing all the evidence in the light most favorable to the party opposing the motion and without weighing the credibility of the witnesses. *Brady v. Southern Ry.*, 320 U.S. 476, 479–480, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943).

At trial, the evidence, so viewed, showed the following. At the time of the accident on April 11, 1977, the Uricos were doing business as Action Trucking. They had entered into an agreement with one Richard Lester ("Lester") whereby Lester was to operate the tractor-trailer involved in the accident. When the accident occurred, the tractor-trailer was, in fact, being operated by a Harold Windsor ("Windsor"), who had come into possession of the equipment through Lester, apparently without authority from plaintiffs.

Within a few days after the accident, defendant's insurance company, Bankers & Shippers Insurance Company ("Bankers & Shippers"), entered into a settlement agreement with Windsor, whereby it agreed to pay Windsor $15,102.05 for repairs to the trailer, and it paid him forthwith $3,500 for its loss of use during repairs and Windsor's expenses. Subsequently, Bankers & Shippers issued a check for $15,102.05, payable to Windsor, and mailed it to his address in California.

When Bankers & Shippers learned, through a telephone conversation with Windsor's wife, that Windsor had not picked up the check, it stopped payment on that draft and on May 23rd reissued the draft payable jointly to Windsor and the body shop which was repairing the vehicle. It stopped payment on that draft also when it realized that Windsor had not picked up the repaired trailer.

On June 27, 1977, after plaintiffs became aware of the damage to their trailer, their lawyer informed Bankers & Shippers of plaintiffs' interests and Windsor's lack of

authority to settle on their behalf.[1] Subsequently, in a letter dated August 12, 1977, the Uricos made a demand for $19,490.13 for property damage and for $1,000 per week for loss of use. Bankers & Shippers, however, maintained that it had already settled the matter with Windsor and offered only to reissue the check for $15,102.05.

In the meantime, the trailer had been repaired. Although it was not clear from the evidence precisely when the repairs were completed, the jury could have found that by August 24, 1977 the trailer was ready to be picked up. However, plaintiffs did not have the money to pay the repair bill. In fact, they abandoned the trucking company entirely in early 1978. The trailer remained in the body shop until September, 1979 when, on order of this court, the insurance company released a check for $15,102.05. Plaintiffs introduced figures showing the profits they had derived from the tractor-trailer combination from March 31, 1976 to June 1, 1976, from which the jury could derive a monthly amount of profits lost during the time the trailer was not in use.

Defendant's motions are based on its contention that plaintiffs may not properly be awarded damages for loss of use of the trailer after completion of the repairs.

Damages for injuries to personal property include all losses caused by the defendant's negligent conduct. However, the plaintiff is under a general obligation to take reasonable action to limit or mitigate his damages. *Valencia v. Shell Oil Co.,* 23 Cal.2d 840, 844, 147 P.2d 558, 560 (1944). In cases involving claims for loss of use of a commercial vehicle capable of being repaired, this general requirement translates into the rule that recovery for loss of use is limited to the time reasonably necessary to make repairs. *Stahl v. Farmer's Union Oil Co.,* 145 Mont. 106, 113, 399 P.2d 763, 767 (1965); *Valencia v. Shell Oil Co., supra,* 23 Cal.2d at 844, 147 P.2d at 560.

However, this is not an absolute rule. A plaintiff may be entitled to loss of use damages extending beyond the time actually necessary to make repairs, depending on the reasonableness of his efforts to minimize his damages. This, in turn, depends on a number of factual circumstances, including the financial situation of the plaintiff, the cause of the plaintiff's inability to minimize his loss, the role played by the defendant in contributing to the difficulty in which the plaintiff finds himself at the time mitigation would be required, and the relative ability of both parties to prevent the aggravated loss.

Thus, in *Valencia v. Shell Oil Co., supra,* plaintiff was awarded loss of use damages beyond the period of time necessary to make repairs where the evidence showed that he was unable to pay for the repair and defendant refused to pay unless plaintiff agreed to a release of all other claims. The court stated: "the essence of the rule denying recovery for losses which could have been prevented by the reasonable efforts and expenditures of the plaintiff is that his conduct rather than that of defendant's proximately caused such losses." *Id.,* 23 Cal.2d at 846–847, 147 P.2d at 561. Because in that case the defendant's actions were causally related to the aggravated damages, the plaintiff was relieved of the mitigation requirement. *See, also, Stahl v. Farmer's Union Oil Co.,* 145 Mont. 106, 399 P.2d 763 (1965) (upholding trial court's damage award to plaintiff where defendant had negligently caused initial damage to plaintiff's oil truck and plaintiff, who was financially unable to pay repair bill, was not careless or negligent); *Hiss v. Friedberg,* 201 Va. 572, 112 S.E.2d 871 (1960) (both parties in equally good position to limit damages). The issue is one of fact. *Gainer v. Storck,* 169 Cal.App.2d 681, 338 P.2d 195 (1959) (whether plaintiffs exercised reasonable effort to minimize damages where they lacked money to pay for repairs was properly a question for the jury).

---

1. Indeed, in response to a special question, the jury found that Windsor did not have authority to settle any claim for damages to the trailer on behalf of plaintiffs.

Where, as a matter of law, plaintiffs have not been entitled to recover damages for the extended period of time, the cause of the extended damages has been unrelated to defendant's actions. In *Brandon v. Capital Transit Co.*, 71 A.2d 621 (Mun.App.D.C. 1950), heavily relied on by defendant, the court limited loss of use damages to the time reasonably necessary to make repairs, stating that, since there were reasons "strictly personal to the owner" for its inability to make repairs within a reasonable time, it could not be said that the loss of use due to the financial inability to pay for repairs was a "proximate result" of such negligence. *Id.* at 622. *See, also, Magnolia Petroleum Co. v. Harrell*, 66 F.Supp. 559, 561 (D.Okla.1946) (plaintiff unable to recover cost of renting a substitute vehicle when inability to obtain a replacement was "brought about by war conditions . . . and there was no causal connection in any manner between the acts of negligence and the injury alleged . . . .").

In this case the jury could find a causal connection between defendant's conduct and plaintiff's inability to mitigate damages. There was evidence that defendant's insurer directly contributed to the plaintiff's inability to pay for the repairs in April, 1977.[2] The actions of the insurance company may be imputed to the defendant. *Bergeron v. Mansour*, 152 F.2d 27 (1st Cir. 1945) (representations and conduct of defendant's insurance adjuster operated against defendant as those of his "agents and servants."); *Hayes v. Gessner*, 315 Mass. 366, 52 N.E.2d 968 (1944) (conduct of defendant's insurance company's adjuster binding on defendant). In *Hayes v. Gessner, supra,* the court reasoned that the defendant

"cannot turn over to an insurer the whole management of the subject of settlement in his behalf and accept the benefit of the

insurer's efforts when they are successful and relieve him from liability but repudiate their consequences when they affect his defence adversely. It is no answer to say that the company acts in its own behalf, and that the defendant cannot control its conduct. It does act in its own behalf, but it also acts in behalf of the defendant. . . ." *Id.* 315 Mass. at 369, 52 N.E.2d at 969.

Although the policy in that case expressly stated that the defendant conferred "the sole right of settlement and defense upon the insurance company," and no evidence was adduced in the present case as to the terms of the policy, the jury was entitled to conclude from the evidence that the defendant had authorized Bankers & Shippers to act on its behalf.

■ On all the evidence, the jury could have concluded that defendant, through its agent, was in a better position to minimize the plaintiffs' loss than were the plaintiffs, and that the defendant's actions, both in causing the initial accident and in subsequently refusing to negotiate with plaintiffs, caused the aggravated loss. Moreover, and contrary to defendant's contentions, the jury's conclusion as to the amount of damages was not speculative.

Accordingly, the defendant's motions are denied.

---

**2.** Contrary to defendant's assertions, this evidence was admissible as subsequent conduct of the defendant or its agent for the purpose of determining damages. It was not admitted to "prove liability for or invalidity of the claim or its amount." and was not excludable therefore under Fed.R.Evid. 408, as evidence of settlement negotiations. Fed.R.Evid. 411 specifically provides that the rule excluding evidence of liability insurance does not require the exclusion of evidence of insurance against liability when offered for another purpose, "such as proof of agency, ownership, or control."