**William H. BARNETT, Appellee,**

v.

**Robert Lee LOVE, Lloyd J. Atkins and
Frankie M. Atkins, Appellants.**

**No. 8320.**

United States Court of Appeals
Fourth Circuit.

Argued June 15, 1961.

Decided Sept. 23, 1961.

Julius W. McKay and E. Ellison Walker, Columbia, S. C. (McKay, McKay, Black & Walker, Columbia, S. C., on brief), for appellants.

Alva M. Lumpkin, Columbia, S. C. (Roberts, Jennings, Thomas & Lumpkin, Columbia, S. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

Plaintiff, William H. Barnett, a sergeant in the United States Army, obtained a verdict of $500 for actual damages and $15,000 for punitive damages in a personal injury action tried before a jury. Defendants appeal, contending that the court below erred in failing to give requested instructions. Jurisdiction was based on diversity of citizenship, Barnett being a citizen of South Carolina and all of the defendants being citizens of North Carolina.

This cause of action arose on August 29, 1959, when an automobile driven by Barnett and another automobile driven by defendant Robert L. Love, temporary chauffeur for defendants Mr. and Mrs. Lloyd J. Atkins, collided on Highway 321 approximately one mile south of McConnell, South Carolina. The accident occurred at night when the two vehicles, approaching from opposite directions on a narrow paved highway, collided at or near the center line. The point of impact, though not precisely determined, was on an incline and slight curve. Barnett's vehicle was proceeding downhill and on the inside of the curve. The vehicle operated by Love was proceeding uphill and on the outside of the curve. The occupants of the two automobiles were the only witnesses to the accident.

Barnett's automobile was damaged to the extent of $382.65. He received a compound fracture of his left arm and severe injury to his elbow. Because staphylococcic infection entered the wound, the break would not heal. Several operations were performed on the injured arm and, more than a year later, at the time of the trial, the wound was still draining. Barnett's doctor testified that Barnett has a partial permanent disability as a result of the accident. With the exception of one night in a civilian hospital, Barnett has been treated in Army hospitals and his salary was continued throughout the hospitalization period. Barnett, a military policeman, testified that he is not eligible for promotion because of his injured arm.

When Barnett filed his complaint in which he charged negligence, wilfulness and wantonness on the defendants' part and asked for actual and punitive damages, one of the defendants, Mrs. Atkins, owner of the automobile driven by Love, filed a counterclaim alleging negligence, wilfulness and wantonness on the part of Barnett and asking for both actual and punitive damages. At the end of the trial, the plaintiff having obtained a verdict in his favor, the defendants moved for judgment *non obstante veredicto* or, in the alternative, for a new trial. The District Court denied the motions and this appeal followed. We feel that the defendants are entitled to a new trial.

After the jury had deliberated almost two hours, it returned to the court for additional instructions. A long colloquy between the jury foreman and the court then followed; the jury's confusion was clearly manifested.[1] We are of the opin-

1. "The Court: Mr. Foreman, I understood you wish to ask a question.

"The Foreman: Yes sir, Your Honor. *We are unable to reach a decision. The whole jury is very much in sympathy with the plaintiff but we don't feel that there has been substantial evidence.* In other words, the conflicting testimony—

"The Court: Well, you seldom ever have a case without conflicting testimony. Is your trouble one of fact or one of law?

"The Foreman: Well, we—

"The Court: If it is one of fact, I can't help you.

"The Foreman: Well, it seems to be that the jury has not been able to—

"The Court: I don't want you to go too far about your differences, but I just want to know whether it is a question of fact or question of law.

"The Foreman: Well, I would say it is more the testimony. There has been some conflicts.

"The Court: A question of fact then?

"The Foreman: One side says one thing and the other side tells another.

"The Court: Well, that is the reason we have juries.

"The Foreman: *We can't weigh which is right and we feel it would be unjust to either side to say that either one is to blame. We hate to cause a mistrial or anything of that kind but we think it better to do that than to not render justice.*

"The Court: [The judge discussed, in a lengthy and somewhat irrelevant statement, a number of topics including the difference between the weight of evidence required to prove a point in civil and criminal actions. He then reminded the jurors that all people, in their everyday experience, must pass on the credibility of other persons, and jurors in particular are employed for the very purpose of determining the "weight of the truth." There is no mention of the role sympathy should play in jury deliberations.]

"Now, I could tell you that we could order a mistrial in this case and bring it back, and we would bring twelve more men and women in here—

"The Foreman: Well Your Honor, may I ask a question?

"The Court: Yes.

"The Foreman: *I think the way I understood the charge, that we had to find one person was guilty of carelessness.*

"The Court: *Carelessness or negligence.* [The court here again delivers a lengthy statement containing homely examples of the need to judge the credibility of witnesses and some criteria for doing so. There is no mention at this point of burden of proof or explanation of the law governing this particular case.]

"The Foreman: Your Honor, would you like for us to go back?

"The Court: Yes, I think you should go back and try it over and make an honest effort. I think you should be able to reach a verdict without doing an injustice.

(The jury was removed from the court room.)

(Emphasis added.)

ion that, in attempts by the court to assist the jury, two errors were committed by the learned judge. First, the jury foreman admitted that the jurors were "very much in sympathy with the plaintiff." The court refused to instruct the jurors, as requested by defense counsel, that sympathy for either party must play no part in their deliberations and that they should not permit themselves to be swayed or influenced thereby. Under the circumstances and in view of the jurors' problem as stated by the foreman, we think the jury should have been instructed as requested.

The second error was the court's response to the foreman's statement of his understanding of the law following the court's first long explanation after the jurors returned to the court room:

"The Foreman: Well, Your Honor, may I ask a question?

"The Court: Yes.

"The Foreman: I think the way I understand the charge, that we had to find one person was guilty of carelessness.

"The Court: Carelessness or negligence. * * *"

It is apparent from the foreman's comments and questions that the jury had been unable to determine which of the parties, if either of them, was at fault in causing the accident. The jury admittedly was sympathetic to the plaintiff because of his serious and painful injury. The subsequent concurrence by the trial judge in the foreman's *misstatement* of the law that the jury must find one party or the other guilty of carelessness or negligence may well have misled the jury, with resulting prejudice to the defendants.

█ In the instant case the plaintiff, in order to recover, had the burden of showing that Love's driving negligently caused his, Barnett's, personal injury and property damage. Mrs. Atkins had the burden of proving the allegations in her counterclaim. Before the jury first retired, it was carefully instructed as to the burden of proof on each side of the case. Apparently the charge was not clear to the jurors, however, because they returned to the court for new instructions or a clarification of the law concerning burden of proof. The court should have reinstructed the jury that it was not obligated to find either party negligent, contrary to the foreman's understanding. If the jury thought that both drivers were negligent, a conclusion it could reasonably have reached from the testimony, neither side could recover from the other, absent wilfulness on the part of one of the drivers. If the evidence was at the point of equilibrium in the jurors' minds, they were legally bound to return a verdict for defendants in the main action and for Barnett as defendant to the counterclaim. They should have been so instructed in answer to the foreman's question.

That the jury returned a verdict of $500 to cover both Barnett's actual property damages of $382.65 and his pain and suffering, and a further award of $15,000 punitive damages, may be a further indication of misunderstanding and confusion on the part of the jurors, especially in view of the serious and permanent nature of plaintiff's injuries and the disclosed uncertainty of the jurors concerning evidence of defendants' culpability, gross negligence, wilfulness or wantonness. Had the jury been polled immediately upon the return of this verdict, this question would not presently concern us, but we are not prepared to say what was in the minds of the jurors when they arrived at their verdict as reported.

█ The great discrepancy between the amounts awarded by the jury for actual and punitive damages does, however, provide added weight to the conclusion that the jury may have been confused. Of course, the discrepancy alone would not indicate confusion compelling reversal since, under South Carolina law applicable here, disproportionate awards for actual and punitive damages are permitted. Rogers v. Florence Printing Co., 1958, 233 S.C. 567, 106 S.E.2d 258; Pepsi-Cola Distributors of Charleston,

Inc. v. Barker, 4 Cir., 1960, 274 F.2d 372 and cases there cited.

For the foregoing reasons, we conclude that the judgment of the District Court must be reversed and the case remanded for a new trial.

Reversed and remanded.