Joan DOE # 1, on her own behalf and as next friend of Joan Does # 2 and # 3, minors, Plaintiffs,

v.

CITY OF CHICAGO, a municipal corporation, et al., Defendants.

No. 81 C 2981.

United States District Court, N.D. Illinois, E.D.

Aug. 29, 1983.

Singer & Stein, Chicago, Ill., for plaintiffs.

Jennifer Duncan–Brice, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This case arises from a Chicago police officer's spotting some marijuana grown in a planter or planters on the back porch of a Hyde Park apartment. Before the court is plaintiffs' motion for partial summary judgment as to liability on the claims raised in count I of their first amended complaint. In brief, this count alleges that the strip search of each of the plaintiffs in their home during the execution of a search warrant violated their Fourth Amendment right to be free from unreasonable searches. For the reasons noted below, plaintiffs' motion for summary judgment is granted as to Jane Does # 2 and # 3 and denied as to Jane Doe # 1 [Mrs. Doe].

### I. *Factual Background*

On September 14, 1978, Police Officer Frank Gatz secured a warrant authorizing the search of a "Male White Approx. 40 yrs. old, 6½" Med. Build and East 48th Street Apartment/Unit 1B Chicago, Illinois." The warrant permitted the seizure of "marijuana and all other narcotics and narcotic paraphernalia which have been used in the commission of or which constitutes evidence of the offense of manufacture/possession of marijuana." At approximately 10:30 p.m. on September 14, Officer Gatz, accompanied by at least six other officers, arrived at plaintiff's home to execute the warrant. At home at the time of the search were Mr. and Mrs. Doe, their two teen-age daughters, and a young male friend of the family, all in their night clothes.

The officers seized the plants on the back porch. The Does, upon request, turned over to the officers some additional marijuana, including another plant or plants, some marijuana which had been picked but was still green, and some which had been dried and crushed. During the search the officers found a dot, which one of them says Mrs. Doe told him was LSD, although it apparently could not later be identified because the quantity was too minute. The officers also found a very small quantity of white powder in a small envelope which one officer thought might be cocaine. Although the record is not entirely clear on this point, it was apparently an amphetamine, and the record does not disclose whether it was or was not a prescription drug. Those two items were on Mrs. Doe's dresser. Finally, a loaded handgun was also in the apartment, a handgun which the officers were advised had been lent to the Does by another police officer and which, the record indicates without being explicit, was later established to be properly registered. Mrs. Doe acknowledged ownership of the marijuana and the other substances the officers thought might be illegal.

Subsequently, the officers sent for a matron, Officer Phyllis Townsend, to conduct a search of the three females. Each plaintiff was taken to the bathroom, where she was told to lift her nightgown and to lower her underpants. With these garments displaced each was required to turn to allow a visual inspection of her person and was told to squat several times. The matron did not touch the women during the search. No contraband nor any weapons were found on the plaintiffs as a result of the search. Mr. Doe was patted down by a male officer.

After the strip searches took place Mr. and Mrs. Doe were formally arrested and taken to the station. They later pled guilty to possession of marijuana, for which they received a four-months' "par. 710 probation," Ill.Rev.Stats. ch. 56½, ¶ 710 (1978), essentially a supervision without conviction, followed by expungement. All other charges against the couple were dismissed.

## II. *Legal Principles*

■ The Fourth Amendment protects the security and privacy of persons by barring unreasonable searches and seizures. It accomplishes this by requiring (1) a showing of probable cause and (2) a search warrant, particularly describing the things to be seized, issued by a detached and neutral magistrate. *See Doyle v. Wilson*, 529 F.Supp. 1343, 1353–54 (D.Del.1982), *citing Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979).

The requirement that probable cause be determined by "a neutral and detached magistrate" is central to the Fourth Amendment's protections. As Justice Jackson recognized in *Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 368–369, 92 L.Ed. 436 (1948):

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the amendment to a nullity and leave the people's homes secure only in the discretion of police officers.... When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.

*Accord, Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). *See United States v. Heldt*, 668 F.2d 1238, 1256 (D.C.Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982).

■ Accordingly, even if supported by probable cause, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347 at 357, 88 S.Ct. 507 at 514, 19 L.Ed.2d 576 (1967). The burden of proving the application of these narrowly defined exceptions is on those seeking the exemption to the warrant requirement. *Arkansas v. Sanders*, 442 U.S. 753, 760, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979).

■ It is undisputed that the police possessed a warrant based on probable cause to search the premises where the plaintiffs lived, and to search Mr. Doe. But the prohibition against "open-ended" or "general" warrants means that a "warrant to search a place cannot normally be construed to authorize a search of each individual in that place." *Ybarra v. Illinois*, 444 U.S. 85, 92, n. 4, 100 S.Ct. 338, 342, n. 4, 62 L.Ed.2d 238 (1979). Thus, the question becomes whether the government has met its burden of showing that one of the "jealously and carefully drawn" exceptions to the warrant requirement has been met, and whether exigent circumstances made the procurement of a warrant impracticable in this situation. *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971).

## III. *Joan Does 2 and 3*

■ With respect to Joan Doe # 2 and # 3—the young daughters of Mr. and Mrs. Doe—the government cannot meet its burden.

■ Defendants here argue that the officers had probable cause to believe that the females were concealing contraband or weapons and that exigent circumstances required the officers to conduct the search without a warrant. Exigent circumstances coupled with probable cause, and not probable cause alone, is a valid exception to the warrant requirement. *Payton v. New York*, 445 U.S. 573, 587–88, 100 S.Ct. 1371, 1380–81, 63 L.Ed.2d 639 (1980). *See Coolidge v. New Hampshire*, 403 U.S. 443, 460,

91 S.Ct. 2022, 2034, 29 L.Ed.2d 564 (1971). The deposition testimony of the officers in charge, however, show that no probable cause for the search actually existed. The colloquy with Officer Gratz with respect to the ordering of a strip search reveals no articulable reason to believe that contraband was hidden in the body cavities of the youngsters:

Q Which one of the girls had been out of your supervision during the time you were in the house?

A I believe the youngest one.

Q What about the oldest one?

A She was in the kitchen [with Mrs. and Mr. Doe], and she was giving us a little verbal abuse at that time.

Q Is that why you had her searched?

A No. Just the idea that she was in the kitchen, she was, you know, possibly a suspect, you know, as far as the narcotics or any other narcotics being found.

(Dep. of F. Gatz, at 61–62.)

Sgt. Laskey testified to the reasons for the search as follows:

Q Okay. And it was based on your conversation with them that they used marijuana that you called the matron, is that correct?

A Not in total.

Q What else?

A The fact that when we entered the apartment, the occupants of the apartment scattered to other rooms ... we lost visual sight of everyone for a period of time.

* * * * * *

A ... the fact that we found controlled substances and a loaded handgun, automatic weapon, in the apartment. We found one which experienced—which led me to believe that there might be even more in the apartment, other dangerous weapons—

Q Uh-huh.

A —verbal hostility from the members of the family.

(Dep. of J. Laskey, at 63–64.)

■ The determination of probable cause and exigent circumstances "must be based on the circumstances as they existed at the time of the challenged action and must be viewed from the perspective then obtaining." *United States v. Dunn,* 674 F.2d 1093, 1102 n. 16 (5th Cir.1982). Probable cause exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that [contraband will be found where they] searched." *Carroll v. U.S.,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925); *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). *See Picha v. Wielgos,* 410 F.Supp. 1214, 1221, n. 4 (N.D.Ill.1976).

■ Here, the undisputed facts demonstrate that no probable cause existed to search the persons of Joan Doe # 2 and # 3 for narcotics. *See United States v. Travisano,* 560 F.Supp. 627, 629 (D.Conn.1983) (to establish probable cause there must be reason to believe that evidence of a crime is located at the place to be searched). At the time the searches were conducted controlled substances had been discovered, but only in the bedroom of Mrs. Doe, the kitchen and the back yard window. Mrs. Doe had admitted ownership of all illegal material seized. Both Mr. Doe and Mrs. Doe were wholly cooperative. The daughters were in their nightgowns at the time of the unanticipated visit and were thereafter out of the sight of the officers at most for a few seconds. The fact that the youngsters sought to justify smoking marijuana and were critical of the officers does not begin to justify undertaking a strip search for drugs on them at the time of the search. Rather, the conclusion is inescapable that the two girls were searched merely because they were the children of a suspected manufacturer-owner of marijuana, happened to be in the house at the time of the search, and were less tractable than their parents. "But, a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that

person. *Sibron v. New York*, 392 U.S. 40, 62–63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause *particularized with respect to that person.* This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." *Ybarra v. Illinois*, 444 U.S. at 91, 100 S.Ct. at 342 (emphasis supplied).

Nor was there probable cause to believe that the daughters were hiding weapons in their bodies. The discovery of a gun in Mrs. Doe's bedroom does not justify the strip search of her daughters. The girls were wearing nightgowns and the officers obviously had no real fear that they were hiding weapons on their person, since they had been at the house for a significant period of time without even a pat-down search. *Cf. Logan v. Shealy*, 660 F.2d 1007, 1013 (4th Cir.1981). The possibility that weapons might be hidden in the females' body cavities is not realistic with respect to these youngsters, nor is it generally compelling. As Judge McMillen concluded with respect to female detainees:

> It is unreasonable, in our opinion, to subject every female arrestee to a visual search of her private parts, sometimes followed by a physical search, in view of the small number of instances in which weapons have been found and the illogicality of believing that a search for weapons there would be fruitful.

*Jane Does 1–5 v. City of Chicago*, No. 79 C 789 (N.D.Ill., January 12, 1982).

In addition, the search of the children could not be justified as valid searches incident to their arrest for the simple reason that they were never placed under arrest. Though in his deposition Sergeant Laskey stated that the children were not free to leave (Dep. of J. Laskey, at 64), this detention did not constitute an arrest. Though the officers had the right to detain briefly occupants of an apartment they had a warrant to search, *see Michigan v. Sum-* mers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), there was no probable cause to believe the children were in possession of drugs and, therefore, no basis for a search or an arrest. That the children were not, in fact, formally arrested buttresses this finding.

Because this court finds there was no probable cause for the search, there is no reason to discuss any exigent circumstances that may have existed. Accordingly, this court concludes that the searches of Joan Doe # 2 or # 3 were unreasonable and in violation of their Fourth and Fourteenth Amendment rights.

### IV. *Mrs. Joan Doe*

 The situation with respect to Mrs. Doe differs from that of her daughters. At the time of her search Mrs. Doe had admitted to possession of several items of contraband found in the house. Probable cause, therefore, existed for her arrest. Immediately after the search she was placed under formal arrest. In *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), the Court held that a search immediately preceding a formal arrest, where the probable cause for the arrest existed before the search, was a valid search incident to that arrest. "Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." *Id.* at 111, 100 S.Ct. at 2564. Under the *Rawlings* reasoning, the search of Mrs. Doe falls in the category of a search incident to arrest.

 A search incident to a lawful arrest is a well-settled exception to the warrant requirement. *United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973); *United States v. Garcia*, 605 F.2d 349, 353 (7th Cir.1979), *cert. denied*, 446 U.S. 984, 100 S.Ct. 2966, 64 L.Ed.2d 841 (1980). "Such searches have been held to be reasonable within the meaning of the Fourth Amendment when effected for the purpose of disarming the arrestee or to preserve evidence probative

of criminal conduct." *United States v. Garcia*, 605 F.2d at 352–53.

This presumption of reasonableness is not irrebuttable. The valid arrest of a person does not automatically subject the person to "any search which the arresting officer feels is necessary." *Tinetti v. Wittke*, 479 F.Supp. 486, 490 (E.D.Wis. 1979), *aff'd* 620 F.2d 160 (7th Cir.1980). The search must also be reasonable under the circumstances existing at the time of the search. *Id.* In *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), the Supreme Court discussed the application of this reasonableness standard in determining the constitutionality of strip searches of prisoners.

The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Following these principles, the Seventh Circuit affirmed a finding that a strip search of a non-misdemeanor traffic violator was not a reasonable search incident to an arrest and therefore exceeded the bounds of the Fourth Amendment. *See Tinetti v. Wittke*, 620 F.2d 160 (7th Cir. 1980), *aff'ng* 479 F.Supp. 486 (E.D.Wis. 1979). Also following these principles, Judge McMillen held that the routine strip search of female arrestees was unreasonable and violative of the Fourth Amendment. *Jane Does 1–5 v. City of Chicago*, No. 79 C 789 (N.D.Ill., January 12, 1982).

 Mrs. Doe was arrested for possession of drugs. She was searched incident to that arrest. The question that remains to be determined is the reasonableness of that search in light of the circumstances that existed before and at the time of her arrest. The reasonableness of police conduct under the Fourth Amendment is a question of fact to be determined by a jury.

*Keeler v. Hewitt*, 697 F.2d 8, 12 (1st Cir. 1982). *See Hampton v. Hanrahan*, 600 F.2d 600, 625 (7th Cir.1979), *modified on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). The jury must make its decision "from the totality of a number of specific and, in many instances, disputed facts." *Keeler v. Hewitt*, 697 F.2d at 8. In the present case, where the balancing required turns on a number of factual issues and where the record before the court is not entirely clear as to a number of these issues, the court refuses to usurp the jury's role in determining the reasonableness of the search of Mrs. Doe.

*Salinas v. Breier*, 695 F.2d 1073 (7th Cir.1982), *rehearing denied*, February 11, 1983, is not controlling on the question of the reasonableness of Mrs. Doe's search. In that case, Robert Salinas was arrested pursuant to a valid arrest warrant while driving with his wife and four of his children, the plaintiffs in the action. Salinas' arrest was for possession and transportation of heroin. Plaintiffs were taken into custody and strip-searched. The Seventh Circuit held that, assuming the confinements of the plaintiffs were legal arrests, as the district court had assumed, the strip searches of the plaintiffs were reasonable under the circumstances and therefore constitutional.

In the circumstances here, the only realistic explanation for the legality of the arrests and confinement, if they were legal, is that there was probable cause to believe that [the wife] and each of the children was in possession of a controlled substance. When a person is lawfully arrested for this reason, of course, post arrest searches of the body are generally permissible.

*Id.* at 1083.

There are a number of crucial distinctions between *Salinas* and the present case. First, and most important, in *Salinas* the court assumed that because the arrests were legal the police had "probable cause to believe that a controlled substance [was] hidden on or within the person's body." *Id.* at 1085. In the present case,

no such probable cause can be assumed. It is up to the jury to decide whether the police had sufficient justification to believe Mrs. Doe was hiding evidence on her body to warrant the search. Another difference is that at the time of the search of the plaintiffs in *Salinas* the drugs which had constituted the probable cause basis for their arrest had not yet been found. In the present case, however, the drugs that were the basis for Mrs. Doe's arrest had already been given to the officers by Mrs. Doe. Further, in *Salinas* the police were searching for heroin, a drug frequently carried and stored in small amounts. In the present case the drug involved was marijuana, some in the form of growing plants. Marijuana is most frequently not stored in small amounts and, especially with regard to the plants, is not susceptible to being hidden within the body. Indeed, a trier of fact could well conclude that marijuana plants in full view on a back porch are hardly indicative of the possibility of commercial drug trafficking, concealment, or propensity towards violence, and the record lends considerable support to the view that the officers had no such concerns or reasons for such concerns.

The facts in *Salinas* are, in short, far different from those here. Accordingly, plaintiffs' motion for partial summary judgment as to Jane Does # 2 and # 3 is granted, and as to Jane Doe # 1 is denied. No decision is being made concerning plaintiffs' equal protection claim pending further briefing on the issue by both parties.